UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| LARRY HAYNES, ) | |
| Plaintiff, ) | |
| ) | Civil Action No. 1:16-cv-02086-CKK |
| v. ) | |
| DC WATER IS LIFE, ) | |
| Defendant. ) | |

**DEFENDANT DISTRICT OF COLUMBIA WATER AND SEWER AUTHORITY'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS, OR IN THE ALTERNATIVE MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, MOTION FOR A MORE DEFINITE STATEMENT**

Defendant District of Columbia Water and Sewer Authority ("DC Water")[1], submits this Reply Memorandum in support of its Rule 12(b)(6) Motion to Dismiss, or in the alternative, Rule 56 Motion for Summary Judgment.[2]

**I.   INTRODUCTION**

Larry Haynes ("Plaintiff" or "Mr. Haynes") instituted this suit *pro se*. The initiating document was nothing more than a letter in which Mr. Haynes sought the Court's intervention apparently because he believed DC Water discriminated against him on the basis of a disability. ECF No. 1. DC Water moved to dismiss the complaint on the grounds that: (1) Mr. Haynes's

---

[1] Defendant was incorrectly named "DC Water Is Life" in the caption of this case. The proper legal name for Defendant is the District of Columbia Water and Sewer Authority.

[2] In its original Motion, DC Water sought, as an alternative to dismissal under either Rule 12 or Rule 56, an order for a more definite statement pursuant to Rule 8. As addressed later in this Reply, Plaintiff simultaneously filed with his opposition memorandum a Motion for Leave to Amend (ECF No. 13) requesting leave to amend his initial complaint. Should the Court deny DC Water's request for dismissal, and grant Plaintiff leave to amend, the amended complaint would fulfill DC Water's request for a more definite statement under Rule 8. However, the proposed amendments do not cure the deficiencies in their entirety, and therefore DC Water requests that the Court defer ruling on Plaintiff's motion for leave to amend until Defendant has an opportunity to respond.

"complaint" did not state a claim or demonstrate that this Court had jurisdiction over his claims; (2) that, assuming he sought to bring claims under the Americans with Disabilities Act ("ADA") and the District of Columbia Human Rights Act ("DCHRA"), such claims were time barred; and (3) that Mr. Haynes failed to exhaust administrative remedies. ECF No. 7.  Thereafter, on or about December 15, 2016, Mr. Haynes retained counsel which now attempts to cure the numerous deficiencies in his "complaint."

At the outset, it should be noted that Mr. Haynes sought the Court's assistance because he believed that he should have been allowed additional time to obtain a Master Electrician License due to a learning disability. ECF No. 1. Accordingly, it was assumed that he was asserting claims under the ADA and the DCHRA, and DC Water's memorandum of points and authorities addressed those causes of action. Plaintiff in his opposition memorandum refers to claims of race discrimination, age discrimination and breach of express or implied contract.[3] These additional claims are not properly before this Court because the Court has not granted him leave to amend his "complaint."[4]  Opp. 4.  Also, in a further effort to cure his pleading deficiencies, in his opposition memorandum ("Opposition"), Mr. Haynes cites numerous documents in support

---

[3] In the proposed Amended Complaint, Plaintiff brings six causes of action against DC Water: Count I – ADA; Count II – Disparate Treatment Discrimination in violation of Title VII based on Race and Age (sic); Count III – Race Discrimination in violation of 42 U.S.C. § 1981; Count IV – Violation of the Age Discrimination in Employment Act; Count V – Violation of the DCHRA based on Race, Age, and Disability; and Count VI – Breach of Express or Implied Contract. As discussed in this Reply memorandum, Plaintiff's claims under the ADA (Count I) fail because he failed to file the Complaint in this Court within 90 days of receiving his Notice of Right to Sue. Plaintiff's disability claim under the DCHRA (Count V) fails because he has not filed this claim within the 1 year statute of limitations period. Plaintiff's Title VII claim (Count II) fails because he has not exhausted administrative remedies and more than 300 days has passed since the purported discriminatory act occurred. Plaintiff also purports to bring a claim for age discrimination under Title VII, which does not include protections for age. Plaintiff's ADEA claim (Count IV) also fails due to failure to exhaust. Plaintiff's other claims under the DCHRA – age and race (Count V)– fail because he did not file his suit within the required statute of limitation. Finally, Plaintiff's § 1981 claim (Count III) and Breach of Express or Implied Contract (Count VI) will fail because he has not adequately pled facts to state claims under these counts.

[4] The Court has not yet granted Plaintiff's request for leave to amend his complaint. DC Water intends to file its opposition within the timeframe set forth in Local R. 7. Even assuming these new claims were properly before the Court at this juncture, the additional evidence proffered by Mr. Haynes demonstrates that the claims in the proposed Amended Complaint should fail.

of his ADA and DCHRA disability claim. ECF No. 12; Pl's Mot. to File Exhibits to Pl.'s Opp., ECF No. 14. Except for Mr. Haynes's Charge of Discrimination (Ex. 1), Agreement to Mediate (Ex. 5) and Notice of Right to Sue (Ex. 6),[5] the Court should disregard these documents as they are not properly part of the record.[6] Even if the Court decides to consider all of Mr. Haynes's exhibits, Plaintiff has failed to cure the deficiencies in his original pleading. Accordingly, this Court should grant judgment as a matter of law in DC Water's favor.

## II.   ARGUMENT

The Court should reject Plaintiff's arguments that the Court should not dismiss his Complaint because (1) he has filed a more definite statement, (2) satisfied his administrative exhaustion requirements and (3) his purported Dyslexia rendered him *non compos mentis* thus tolling the time period in which he had to file his action before this Court. Plaintiff's strategy and arguments, while creative, are not supported in the law. Additionally, it is important to note that upon close examination of the Opposition, Plaintiff concedes that his ADA claim cannot stand. Mr. Haynes's response to DC Water's request for dismissal focuses only on his DCHRA claim.[7] Even if Plaintiff did not intend to withdraw his ADA claim, his equitable tolling argument with respect to both the ADA and DCHRA fails. As demonstrated below, Plaintiff's

---

[5] The Court can consider these documents, which are incorporated in the initial complaint, without converting DC Water's motion to dismiss to a motion for summary judgment. *Detroit Int'l Bridge Co. v. Gov't of Can.*, 93 F.3d 76, 84, (D.D.C. 2015) citing *Abhe & Svoboda, Inc. v. Chao*, 508 F.3d 1052, 1059 (D.C. Cir. 2007) ("In deciding a motion under Rule 12(b)(6), a court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits or incorporated by reference, and matters about which the court may take judicial notice.").

[6] DC Water objects to the redactions Plaintiff made in the exhibits he seeks to attach to his Opposition. While some are appropriate, the majority of the redactions exceed the permissible scope of Rule 5.2 of the Federal Rules of Civil Procedure, such as redacting the address and purported signature of Mr. Haynes in Exhibit 7, and Plaintiff has not sought or obtained a protective order which allows him to redact this information. Furthermore, DC Water objects to Exhibit 7, which Plaintiff identifies as the "initial complaint" that Mr. Haynes filed *pro se* on September 29, 2016. This exhibit is not the complaint letter which the Clerk docketed and served upon DC Water. *Compare* ECF No. 1 and Ex. 7. Plaintiff provides no explanation for the discrepancy.

[7] To the extent that Plaintiff's sole surviving cause of action is under the DCHRA, this Court lacks jurisdiction to adjudicate this claim because there is no federal question, diversity jurisdiction or any other grounds for original jurisdiction as required under 28 U.S.C. §§ 1331-1335, 1337-1340, 1343, 1345-1346, 1357.

evidentiary proffers and woefully weak legal arguments demonstrate that DC Water is entitled to judgment as a matter of law on Mr. Haynes's disability claim, whether under the ADA or the DCHRA.  Moreover, his simultaneously filing of a motion for leave to amend does not save those causes of action because the proposed amendments cannot cure his untimely filing.

> **A.** **Plaintiff's Notice of Right to Sue Plainly Shows that He Has Failed to File This Action within the Required 90 Days, Entitling DC Water to Judgment as a Matter of Law on his ADA Claim.**

Plaintiff argues that "exhaustion of administrative remedies is not a jurisdictional prerequisite to Plaintiff's claims of discrimination under the ADA, Title VII, and Section 1981; rather, it is a condition precedent similar to a statute of limitations that is subject to the doctrines of waiver, estoppel, and equitable tolling." Opp. 4.  Plaintiff misconstrues DC Water's argument.  DC Water is not asserting that this Court does not have subject matter jurisdiction due to his failure to exhaust administrative remedies or to file his suit within 90 days of receiving his Notice of Right to Sue.  Instead, DC Water pointed out that Mr. Haynes had failed to plead properly that he had satisfied the conditions precedent to bringing an ADA claim.  Def.'s Mem. of Law 4-5.  Plaintiff's misunderstanding of DC Water's argument, and the several pages that he dedicates to debunk his misunderstanding, does not save this action from dismissal.

In the Opposition, Plaintiff avers that he filed a Charge of Discrimination with the EEOC on May 26, 2015.  Opp. 3, 5; Pl.'s Mot. to File Exhibits to Pl.'s Opp. Ex. 1.[8]  Plaintiff purportedly received the Notice of Right to Sue the next day, on May 27, 2015.  Opp. 3, 5; Pl.'s Mot. to File Exhibits to Pl.'s Opp. Ex. 6.  Mr. Haynes then had ninety (90) days from the issuance of the Notice of Right to Sue to file his complaint with this Court (i.e., no later than August 25, 2015).  On September 29, 2016, Plaintiff submitted his "complaint" to this Court,

---

[8] Because this Court must construe the facts in favor of the nonmoving party, for the purpose of this Motion only, DC Water does not dispute that the Charge of Discrimination cited as Exhibit 1 in the Opposition demonstrates that Mr. Hayes has exhausted his administrative remedies under the ADA.

4

which filed the complaint letter on October 20, 2016.  ECF No. 1.  The simple math demonstrates that Plaintiff's initial filing was nearly seventeen (17) months *after* he received the Notice of Right to Sue, and approximately fourteen (14) months *after* the expiration of Plaintiff's deadline to initiate his ADA suit.  Consequently, as a matter of law, Plaintiff's ADA claim must be dismissed and judgment as a matter of law entered in DC Water's favor.  *Akridge v. Gallaudet Univ.*, 729 F. Supp. 2d 172, 177-78 (D.D.C. 2010) ("A plaintiff aggrieved under Title VII or the ADA must commence a civil action within ninety days after receipt of a right-to-sue letter from the EEOC."); *Nkengfack v. Am. Ass'n of Retired Persons*, 818 F. Supp. 2d 178, 180 (D.D.C. 2011) ("[T]he fact that a plaintiff is a *pro se* litigant does not exempt him from the 90-day statute of limitations.  'No matter how slight the tardiness, a court is not at liberty to disregard the 90-day deadline out of a vague sympathy for any particular plaintiff.'" (quoting *Turner v. Afro-Am. Newspaper Co.*, 572 F. Supp. 2d 71, 73 (D.D.C. 2008))).

Mr. Haynes's disability claim under the DCHRA fairs no better.  "Under the D.C. Human Rights Act, an employee must file a private cause of action against an employer 'in a court of competent jurisdiction within one year of the unlawful discriminatory act, or the discovery thereof.'" *Akonji v. Unity Healthcare, Inc.*, 517 F. Supp. 2d 83, 92 (D.D.C. 2007) (quoting D.C. Code § 2-1403.16).  While it is true that filing a Charge of Discrimination with the EEOC tolls the DCHRA's one-year statute of limitations, that time period begins running again upon the issuance of the Notice of Right to Sue.  As this Court in *Hammel v. Marsh USA Inc.*, explained:

> Pursuant to the worksharing agreement between the DCOHR and the EEOC, 'the EEOC's issuance of a right to sue notice automatically results in the DCOHR's termination of the case based on administrative convenience, enabling the plaintiff to file suit under the . . . DCHRA.' As the EEOC issued Plaintiff's right to sue letter before Plaintiff withdrew her complaint from the DCOHR, the Court views as dispositive the EEOC's issuance of the right to sue letter—not Plaintiff's subsequent withdrawal of her complaint with the DCOHR.  Accordingly, the

>tolling period for Plaintiff's DCHRA claims ended when the EEOC issued its right to sue notice.

79 F. Supp. 3d 234, 240-41 (D.D.C. 2015) (quoting *Miller v. Gray*, 52 F. Supp. 3d 62, 69 (D.D.C. 2014)) (internal footnotes omitted); *Miller*, 52 F. Supp. 3d at 69 ("[T]he EEOC's issuance of a right to sue notice automatically results in the DCOHR's termination of the case based on administrative convenience, enabling the plaintiff to file suit under the ADEA and DCHRA. . . . [O]nce the EEOC charge was filed, the DCHRA's one year statute of limitation was tolled until the plaintiff received a notice from the EEOC of his right to sue.").

Plaintiff argues that "the statute of limitations for Plaintiff's DCHRA claims was tolled when Mr. Haynes filed a complaint with the EEOC, and his DCHRA claims are therefore timely." Opp. 6.  Construing the facts in Plaintiff's favor, the earliest discriminatory act that would have commenced the running of the DCHRA's 1 year statute of limitations was when he learned of his obligation to obtain his license on September 2, 2014, and the latest discriminatory act was when he was terminated on May 31, 2015.  Opp. 2.[9]  In this case, the tolling period is only one-day long, from the time that Mr. Haynes filed his Charge of Discrimination with the EEOC on May 26, 2015 and ended on May 27, 2015 when he received the Notice of Right to Sue.  Consequently, regardless of which "discriminatory act" triggered the one-year statute of limitations, or on what date that act occurred, it is clear that Plaintiff's time to file a claim under the DCHRA has lapsed.[10]  As a result, Plaintiff's DCHRA and ADA disability claims should be dismissed as a matter of law in favor of DC Water.

---

[9] Mr. Haynes filed his purported Charge of Discrimination on May 26, 2015, several days prior to his termination. Mr. Haynes did not amend his Charge after the effective date of his termination on May 31, 2015.  Clearly, Mr. Haynes viewed his removal from the job on April 1, 2015 as an adverse employment action, and therefore it should be the operative date for statute of limitations purposes.

[10] If September 2, 2014 is the operative discriminatory act, with only one day's tolling of the statute, Mr. Haynes would have had to commence his suit as of September 3, 2015.  If April 1, 2015 (when Mr. Haynes was removed from his job) is the operative date, with one day's tolling of the statute, Mr. Haynes would have had to commence

6

### B. Plaintiff Was Not Incapacitated As Recognized by DC Law and Therefore the Applicable Statutes of Limitations Are Not Tolled.

Plaintiff contends that his disability claims should not be dismissed because the applicable statutes of limitations were equitably tolled as his Dyslexia rendered him *non compos mentis*.[11]  Plaintiff misconstrues the doctrine of *non compos mentis* under the law of the District of Columbia.

The "90-day, non-jurisdictional time limit [in the Notice of Right to Sue] functions like a statute of limitations and is subject to waiver, estoppel and equitable tolling." *Nkengfack*, 818 F. Supp. 2d at 180.  Likewise, the DCHRA's statute of limitations can be equitably tolled.  *See Zelaya v. UNICCO Serv. Co.*, 587 F. Supp. 2d 277, 285 (D.D.C. 2008).  "Equitable tolling permits a plaintiff to avoid the bar of the limitations period if despite all due diligence [he] is unable to obtain vital information bearing on the existence of [his] claim." *Smith-Haynie v. D.C.*, 155 F.3d 575, 579 (D.C. Cir. 1998).  The party seeking equitable tolling bears the burden of proving it, and this burden is heavy as "'[t]he court's equitable power to toll the state of limitations will be exercised only in extraordinary and carefully circumscribed instances.'" *Id.* at 579-80 (quoting *Mondy v. Sec'y of the Army*, 845 F.2d 1051, 1057 (D.C. Cir. 1988)).

Here, Plaintiff states that he "filed suit upon receipt of a notice of right to sue when the deadline is tolled due to [his] disability."  Opp. 6.  In support, Mr. Haynes cites D.C. Code § 12-302, which states that "when a person entitled to maintain an action is, at the time the right of action accrues: . . . non compos mentis, he or his proper representative may bring action within the time limited after the disability is removed."  Courts in the District of Columbia have

---

his suit as of April 2, 2016.  If May 31, 2015 (Mr. Haynes's termination date) is the operative date, with one day's tolling of the statute, Mr. Haynes would have had to commence his suit as of June 1, 2016.  Mr. Haynes's September 29, 2016 filing occurred more than 4 months after the latest date on which his filing could have been timely.

[11] As noted above, Plaintiff's argument is only as to his disability claim under the DCHRA.  But again, DC Water will address Plaintiff's argument as to both the ADA and the DCHRA.

interpreted the term *non compos mentis* to mean "generally one who is not capable of handling his own personal affairs or who cannot function in society." *Oparaugo v. Watts*, 884 A.2d 63, 73 (D.C. 2005); *Smith-Haynie v. DC*, 155 F.3d 575, 580 (D.C. Cir. 1998) ("The code does not itself define *non compos mentis*, but '[t]he phrase '*non compos mentis* . . . generally refers to someone incapable of handling her own affairs or unable to function [in] society.''" (quoting *Hendel v. World Plan Executive Council*, 705 A.2d 656, 665 (D.C. 1997))); *Hendel v. World Plan Exec. Council*, 705 A.2d 656, 665 (D.C. 1997) ("*Impaired judgment alone* is not enough to toll the statute of limitations." (quoting *Speiser v. United States Dep't of Health & Human Servs.*, 670 F. Supp. 380, 384 (D.D.C. 1986))); *Burnett v. Sharma*, No. 03-2365(RBW), 2007 WL 1020782, at *8 (D.D.C. Mar. 30, 2007) ("'A person is mentally unsound for purposes of tolling civil statute of limitations when the 'disability is of such a nature as to show [that a plaintiff] is unable to manage [her] business affairs or estate, or to comprehend [her] legal rights or liabilities.'" (quoting *McCracken v. Walls-Kaufman*, 717 A.2d 346, 354 (D.C. 1998))).

In an effort to meet his burden of proving that equitable tolling applies in this case, Mr. Haynes has submitted reports from a purported clinical neuropsychologist.[12] Mr. Haynes asserts that these reports demonstrate that:

- "Mr. Haynes 'met the criteria for specific learning disability in reading and understanding English language . . . .'"
- "Mr. Haynes had a 'relative weakness in decoding words as compared to reading words in isolation may indicate that Larry [Haynes] has difficulty providing phonetic rules for decoding words but may not have learned vocabulary words to automaticity."
- "Mr. Haynes had 'serious difficulties in reading and understanding English language . . . ."

---

[12] Defendant objects to Plaintiff's proffer of these medical reports as they were not attached to the initial complaint as exhibits or incorporated by reference. *Detroit Int'l Bridge Co.*, 93 F.3d at 84. Further, the Court cannot take judicial notice of these exhibits because they are not public records, historical, political, or statistical facts or other facts which are verifiable with certainty. *Id.* at 84-85. Even if the Court does not disregard these exhibits, Plaintiff has not met his burden of proving that the statute of limitations was equitably tolled until September 29, 2016.

8

Opp. 6-7.  The clinical reports simply show that in the opinion of his healthcare provider, Mr. Haynes has difficulty reading due to his Dyslexia.  Nowhere do these reports state that Mr. Haynes's learning disability is so severe that he is illiterate, unable to manage his business or family affairs, or function on a daily basis.  To the contrary, these reports demonstrate that Mr. Haynes is fully capable of managing his own affairs:

> Larry [Haynes] is a 54-year-old African-American mal[e.]  He came to the testing sessions well kept, and groomed. Hygiene was effectively managed and he dressed appropriate for the occasion.  His stature in relation to age and sex was normal. There was nothing unusual about his posture, bearing or physical features that differentiated him from his peers. Larry seemed to be well kept, well nourished and in no apparent distress. Facial expression was responsive, and eye contact was appropriate.  Larry demonstrated normal activity level and he appeared not to be easily aroused by extraneous environmental stimuli. . . .
>
> Larry's speech was spontaneous but with significant articulation problems.  However communication with the examiner was not impeded in any significant way either receptively or expressively.  His thinking was assessed through his speech production. Larry's thought process was coherent, logical and goal directed. He was able to reach his goal of thoughts without significant digression.  Thought content was devoid of delusion, phobia, obsession, suicide, homicide, preoccupied ideas or any symptoms of psychosis.  Larry denied any sensory experience (such as auditory, visual or tactile) that had no basis in reality.
>
> Clinical anxiety in its various facets of behavior, cognition and affect was not observed.  Also there was no significant evidence of clinical depression in his affect, cognition and behavior.
>
> Major components of his memory, such as, immediate, short-term and remote memories appeared to be intact.  Larry did not exhibit significant attention and concentration problems.  Larry was adequately oriented to time, place and person. There were no significant evidence of oppositional defiance or conduct problems.

May 13, 2015 Clinical Neuropsychological Evaluation, Pl.'s Mot. to File Exhibits to Pl.'s Opp. Ex. 4.  Moreover, the second clinical neuropsychological evaluation dated September 13, 2015—a few weeks *after* the end of the 90 day filing period—makes no reference to Mr. Haynes being considered by this purported medical professional to be cognitively impaired, let alone *non compos mentis*.  Pl.'s Mot. to File Exhibits to Pl.'s Opp. Ex. 4.

9

Additionally, Mr. Haynes does not contend that a court or any other judicial body has ever adjudicated him as *non compos mentis*, that he had to sign a power of attorney relinquishing legal decision making powers, that he was unable to care for himself or his family, or that he was otherwise unable to understand his legal rights. *Speiser*, 670 F. Supp. at 383 (rejecting the plaintiff's equitable tolling argument, and noting that "[h]er psychiatrist stated that in the months following her resignation, plaintiff was depressed, preoccupied, and unable to think rationally about her employment situation. He does not state that she was ever *noncompos mentis* (sic), or that her condition made her unaware of the circumstances surrounding her resignation and their consequences."), *aff'd*, 818 F.2d 95 (D.C. Cir. 1987).

Indeed, information which has been proffered demonstrates that Mr. Haynes was well aware of his legal rights, and any argument to the contrary is disingenuous. Mr. Haynes understood his rights sufficiently to go to the EEOC on May 26, 2015, be interviewed with an intake coordinator, review and sign his Charge of Discrimination, and agree to participate in the EEOC's mediation program. Opp. 3; Pl.'s Mot. to File Exhibits to Pl.'s Opp. Exs. 1 &5; Compl. ¶ 1 ("I then went to Equal Opportunity to see if I had a case against DC water and at that time they granted me a hearing in 90 days from that date. The hearing never took place so I went back down [to] Equal Opportunities and they then suggest to me that I go to Federal Courts to approve my case.").[13] Plaintiff has not presented any facts to demonstrate that between May 26, 2015 when he filed his Charge, and May 27, 2015 when he received his Notice of Right to Sue, that he suddenly became unable to understand his legal rights. Nor has Mr. Haynes presented any

---

[13] As noted *supra* note 6, Exhibit 7 which purports to be the initial complaint Mr. Haynes filed *pro se* is not, in fact, the same document. To the extent the Court considers this exhibit, it is noteworthy that mental incapacity is not the reason that Mr. Haynes provides to explain his failure to file his complaint within 90 days of receiving the Notice of Right to Sue, but rather that he "forgot." Ex. 7 ("I talk to equal employment opportunities to see if I have a case against DC water I was approved with equal employment opportunities I was to Have (sic) a hearing in 90 day[s] **I forgot the hearing day and the case was drop[ped]**." (emphasis added)). Thus, Mr. Haynes admits that he understood he had a ninety (90) day deadline, and merely forgot about it.

evidence to explain how he was unable to understand his rights to file suit during the applicable statutory periods, but was able to understand this obligation on September 29, 2016 when he actually filed suit. *Smith-Haynie*, 155 F.3d at 580 ("Moreover, plaintiff does not explain what happened between the 90th and the 91st day after she received her letter, when she had the presence of mind to consult a lawyer.").

In addition to his reports from his clinical neuropsychologist, Mr. Haynes cites two cases in support of his argument: the Rhode Island state court case of *Roe v. Gelineau*, 794 A.2d 476, 487 (R.I. 2002) and *Smith-Haynie*. These cases do not support his request for equitable tolling, but actually state the exact opposite and support dismissal of his claims.

Plaintiff cites *Roe* for the proposition that "a learning disability in certain circumstances can establish non compos mentis." 794 A.2d at 487. In so doing, Mr. Haynes grossly misrepresents the facts and holding of this case. Nowhere in the opinion does the Supreme Court of Rhode Island hold that a learning disability means a plaintiff is *per se* of "unsound mind;" that state's standard for equitable tolling due to mental incapability.[14] Instead, similar to Mr. Haynes, plaintiff/appellant *argued* on appeal that the Court should find he was of unsound mind based on his testimony that he was unable to function normally in society and

> that the evidence of his multiple diagnoses, which included atypical psychosis, conduct disorder, aggression, undersocialization, personality disorder, oppositional/defiant disorder, paranoid ideation, high anxiety, impaired social and environmental functioning, and *mixed learning disabilities*, gave rise to an inference that he was of unsound mind.

*Id.* at 487. The *Roe* court rejected the plaintiff/appellant's argument finding that the plaintiff/appellant had not proffered sufficient evidence to show that he was of an "unsound mind."

---

[14] 9 R.I. Gen. Laws Ann. § 9-1-19 ("If any person at the time any such cause of action shall accrue to him or her shall be . . . of unsound mind, . . . the person may bring the cause of action, within the time limited under this chapter, after the impediment is removed.").

Under Rhode Island law, "the term unsound mind historically has meant a general incapacity to protect one's legal rights and manage one's affairs." [15] *Id.* at 482.  In finding that the plaintiff/appellant was not of an "unsound mind" within the applicable statute of limitations so as to equitably toll his claims, the court reasoned:

> Notwithstanding the plaintiff's "low average" IQ, memory problems, repeated hospitalizations, and numerous psychiatric conditions, including psychotic symptoms until the age of thirteen, the record revealed that he was, during some periods of his adult life, oriented in time, place, and person, able to manage his income, and competent to take part in criminal proceedings against him. Apparently, no court ever appointed a guardian *ad litem* on his behalf.  This objective evidence of Roe's functional abilities suggests that, notwithstanding his psychiatric diagnoses, he still could take care of his day-to-day affairs. Although the plaintiff pointed out that he was unable to study for his GED and never held a driver's license, these circumstances do not prove an inability to manage daily functions.  Thus, even taking the facts alleged in the light most favorable to the plaintiff, we are of the opinion that they do not establish an inability to manage the day-to-day affairs of his life.  Accordingly, we agree with the motion justice that the facts do not support a determination that the plaintiff was of unsound mind for purposes of invoking the tolling provisions of § 9–1–19.

*Id.* at 488.  Likewise, Mr. Hayne was not *non compos mentis* during the applicable limitations period.

In addition to *Roe*, Plaintiff cites *Smith-Hayne v. District of Columbia*, for the proposition that "a doctor's diagnosis would have strengthened [the] claim" that the plaintiff was *non compos mentis* during the 90-day period to file her Title VII claim.  155 F.3d at 580.  Plaintiff construes this case to stand for the proposition that any clinical diagnosis will satisfy his burden that he was *non compos mentis*.  Plaintiff misconstrues the decision in *Smith-Hayne*.  The Court stated that "[i]t *may* be that a doctor's diagnosis would have strengthened her claim." *Id.* (emphasis added).  In fact, *Smith-Haynie* shows that Mr. Haynes's Dyslexia diagnosis is not sufficient to render him *non compos mentis* as a matter of law.

---

[15] This standard is nearly identical to the definition of *non compos mentis* under DC law.

In *Smith-Haynie*, the plaintiff argued that she did not understand the Right to Sue letter, and she was "further traumatized and simply unable to psychologically deal with it." *Id.* at 580. In examining the plaintiff's affidavit regarding her mental state during the 90-day period, the Court opined that she did not demonstrate that she was "'[un]able to engage in rational thought and deliberate decision making sufficient to pursue [her] claim alone or through counsel,' nor does she provide information to support an inference that she was '*in fact* prevent[ed] . . . from managing [her] affairs.'" *Id.* (quoting respectively *Nunnally v. MacCausland*, 996 F.2d 1, 5 (1st Cir. 1993) and *Miller v. Runyon*, 77 F.3d 189, 191 (7th Cir. 1996)). Unconvinced by the plaintiff's affidavit explaining her symptoms, and her lack of medical support for her claims, the Court expressed doubt based upon the plaintiff's inability to "explain what happened between the 90th and the 91st day after she received her letter, when she had the presence of mind to consult a lawyer." *Id.* Consequently, the Court ruled that the plaintiff had not presented sufficient evidence to show that she was *non compos mentis* during the applicable time period for equitable tolling to apply, and affirmed the dismissal of her case. *Id.* at 580-81. The only difference between Mr. Haynes and the plaintiff in *Smith-Haynie* is that Mr. Haynes attached reports from his clinical neuropsychologist purportedly obtained before he contacted the EEOC and after he obtained his Notice of Right to Sue showing that he has a learning disability. But, as explained above, a diagnosis of a learning disability is not sufficient to show that Mr. Haynes was unable to engage in rational thought, deliberate decision making, or otherwise unable to manage his affairs. Therefore, the Court should reach the same conclusion as that in *Smith-Haynie* that the statute of limitations period was not equitably tolled.

Plaintiff has failed to carry his burden to establish that he is presently, or ever was, *non compos mentis*, during either the 90-day ADA filing period or the 1 year DCHRA filing period.

13

Consequently, Mr. Haynes has provided no legal justification for his failure to comply with these statutory filing deadlines, and this Court should dismiss his claims and grant judgment as a matter of law in DC Water's favor. *See Ferguson v. Local 689, Amalgamated Transit Union*, 626 F. Supp. 2d 55, 61 n. 2 (D.D.C. 2009) ("Although it is true that courts liberally construe *pro se* filings, a case in which a plaintiff fails to meet a statutory deadline but attributes it to her *pro se* status is not one in which a court should toll the statute of limitations." (internal citation omitted)).

### III. CONCLUSION

DC Water has met its burden of proving that Plaintiff's claims under the ADA and DCHRA are time barred. Plaintiff has failed to carry his burden that the statute of limitations should be equitably tolled pursuant to the doctrine of *non compos mentis*. Accordingly, the Court should dismiss Mr. Haynes's causes of action under the ADA and DCHRA for disability discrimination, and enter judgment as a matter of law in DC Water's favor.

Respectfully submitted,

Date: January 17, 2017

*/s/ Alison N. Davis*
Alison N. Davis, Esq., Bar No. 429700
Meredith L. Schramm-Strosser, Esq., Bar No. MD18537
LITTLER MENDELSON, PC
815 Connecticut Avenue, NW, Suite 400
Washington, DC 20006
Telephone: 202.842.3400
Facsimile: 202.842.0011
andavis@littler.com
mschrammstrosser@littler.com

*Counsel for Defendant District of Columbia Water and Sewer Authority*

## **CERTIFICATE OF SERVICE**

I hereby certify that on January 17, 2017, a true and correct copy of the foregoing Reply Memorandum In Support of Motion to Dismiss, or in the Alternative, or in the Alternative, Motion for Summary Judgment, or In the Alternative, Motion for a More Definite Statement, was filed with the Clerk of the Court and served via CM/ECF to:

David A. Branch, Bar # 438764
Law Office of David A. Branch & Associates, PLLC
1828 L Street NW, Suite 820
Washington, DC 20036

*Counsel for Plaintiff*

 

          */s/ Alison N. Davis*
          Alison N. Davis